UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES,<br>    v.<br>STANISLAV NAZAROV,<br>    Defendant. | Criminal Action No. 17-cr-18 (CKK) |

**ORDER**
(February 28, 2018)

A dispute has arisen in this criminal action as to whether the Court should apply a two-level enhancement for "sophisticated laundering" under U.S.S.G. § 2S1.1(b)(3) to Defendant's sentence. Section 2S1.1(b)(3) calls for a two-level enhancement if the Defendant is convicted under 18 U.S.C. § 1956, and "the offense involved sophisticated laundering." Defendant has pled guilty to conspiracy to commit money laundering under Section 1956, but the parties dispute whether the money laundering at issue was "sophisticated." The Government and the Probation Officer assigned to this case contend that this enhancement applies. Defendant contends that it does not.

The comments to the Sentencing Guidelines are instructive. Those comments state that "sophisticated laundering" "means complex or intricate offense conduct pertaining to the execution or concealment of the 18 U.S.C. § 1956 offense," and that such laundering "typically involves the use of fictitious entities, shell corporations, two or more levels (i.e., layering) of transactions, transportation, transfers, or transmissions, involving criminally derived funds that were intended to appear legitimate, or offshore financial accounts." U.S.S.G. § 2S1.1, cmt. 5(A). This does not purport to be an exhaustive list of the characteristics of sophisticated laundering, nor are these factors required for a finding of sophisticated laundering—they are merely "typical."

The Section 1956 conduct in this case involved sophisticated laundering. It involved the transfer of funds from one of Defendant's co-conspirators (who happened to be a government

witness) to Defendant. The funds were owed to Defendant in connection with the implementation of a business email compromise fraud scheme targeting the Dubai subsidiary of an Indian reinsurance company. Instead of simply sending money to Defendant via wire transfer or similar means, the co-conspirator first wired that money to a bank account in Russia. That account was created in the name of yet another co-conspirator's wife. The co-conspirators believed that an account in the wife's name would not be scrutinized because she was not herself Russian, and thus would be a safer place to send funds that might not be "kosher." The recipient of the wire transfer instructed that the form associated with the transfer should indicate that the money was intended for "financial help," although in reality it was intended as part of a money laundering scheme. The co-conspirator withdrew the money from his wife's bank account in Russia. Then, instead of conducting another wire-transfer to get that money to the Defendant, who was in Israel, the conspirators used a hawala network. A hawala network is an informal money transmitting system that is based on relationships of mutual trust between members of a network of brokers. Roughly speaking, money is delivered to one member, who contacts another member in a different geographic area and instructs them to deliver an equivalent amount of money, minus a fee, to a recipient. In this case, the co-conspirator in Russia took a picture of the money and sent that picture to Defendant, who subsequently confirmed his own receipt of money in cash in Israel, minus a fee charged for the hawala transfer. Presumably other individuals were involved in the execution of the hawala transfer.

      The Court finds this scheme sufficiently complex and intricate to warrant application of the Section 2S1.1(b)(3) enhancement. The money traversed multiple countries and passed through the hands of multiple individuals. The co-conspirators attempted to avoid scrutiny by using a false description and funneling the money through a bank account of an unrelated third party in a foreign country. Moreover, the money was transferred through two different mechanisms: wire transfers and a hawala network. It has at least two of the factors that the Sentencing Guidelines note as typical of sophisticated laundering. First, it involved layering—

the use of two or more layers of transactions, transportation, transfers or transmissions. In this case, the layering involved the use of a wire transfer to the bank account of an associate's wife in Russia, and the subsequent use of a Hawala network to deliver cash to the Defendant in Israel. These are two levels, or "layers," of transactions. Defendant argue that "[t]ypically layering involves not just multiple transactions but conversions between various forms of property," Def.'s Mem. in Aid of Sentencing, ECF No. 28 ("Def.'s Mem."), at 6, but provides no legal support to suggest that such a "conversion" is a required aspect of "layering." The Sentencing Guideline's description of layering does not suggest that it is, nor does the case law that the Court has reviewed. *See, e.g.*, *United States v. Puerto*, 392 F. App'x 692, 701 (11th Cir. 2010) (holding that the district court did not err by concluding that a "wire-transfer scheme involving the circular transfer of funds between various companies to create the illusion of revenues that enabled the perpetuation of the fraud" demonstrated the existence of "two or more levels (i.e. layering) of transactions").

Second, an offshore financial account was used—the Russian bank account in the name of Defendant's co-conspirator's wife. Defendant argues that this does not constitute an "offshore" account because he "is a citizen of Israel and Russia" and, accordingly, "[t]hese countries are not 'offshore' for him." Def.'s Mem. at 7. Defendant's interpretation of "offshore financial account" finds no support in the text of the Sentencing Guidelines. The Court agrees with the United States Court of Appeals for the Third Circuit, which recently commented that "the term's plain meaning embraces *all* foreign bank accounts." *United States v. Amaris-Caviedes*, 701 F. App'x 84, 85 (3d Cir. 2017) (emphasis in original).

Because the Court finds that the offense involved sophisticated laundering, a two-level enhancement under Section 2S1.1(b)(3) is appropriate.

**SO ORDERED.**

                                                  /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge