## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| | ) Criminal Case No. 1:17-CR-00018 (CKK) |
| v. | ) |
| | ) |
| | ) The Honorable Colleen Kollar-Kotelly |
| STANISLAV NAZAROV, | ) |
| | ) |
| *Defendant.* | ) |
| | ) |

### DEFENDANT'S RESPONSE TO COURT ORDER OF FEBRUARY 28, 2018

Stanislav Nazarov, through counsel, provides the following Response to the Court's

Order dated February 28, 2018. The defendant respectfully objects to the Court's making

findings regarding a contested United States Sentencing Guidelines ("Guidelines") enhancement

without affording the defendant an opportunity to be heard on the government's arguments.

The defendant submits the points below in response to the Court's Order and in response

to the Revised Final Presentence Investigation Report of February 27, 2018 ("Revised Final

Report"). The Revised Final Report adds a two-level enhancement for sophisticated laundering

that was not included in either of the two previous Presentence Reports, increasing Mr.

Nazarov's total offense level from 13 to 15 and his Guidelines range from 12-18 months to 18-24

months. The Probation Officer based this revision solely on arguments by the government to

which Mr. Nazarov has not had an opportunity to respond. Indeed, the government waived these

arguments for purposes of the Presentence Report by electing not to object to the Draft

Presentence Investigation Report of January 23, 2018 ("Draft Report"), which correctly declined

to apply the sophisticated laundering enhancement. In any case, the government's new

arguments are not supported by fuller consideration of the facts and do not warrant enhancement

for "sophisticated laundering" under U.S.S.G. § 2S1.1(b)(3).  Mr. Nazarov objects to that aspect of the Revised Final Report.

The defendant appreciates that the Court has accommodated his request to schedule the sentencing on the earliest date that was feasible given the normal timeframe for completion of the Presentence Report and submission of sentencing memoranda by both parties, but this timeframe did not require the Court to act on a contested issue without allowing the defense an opportunity to be heard.  The Court should reconsider its Order for the reasons set forth below.

## PROCEDURAL HISTORY

The defense expected to be afforded an opportunity to be heard on the sophisticated laundering enhancement at the sentencing hearing.  The Court has taken precipitous action on this issue, however, preventing the defense from arguing its position on the enhancement, which the parties agreed to contest.  Because the government failed to object to the omission of the enhancement in the Probation Officer's Draft Report, the defendant has had no opportunity to respond to the government's arguments.  The following explanation of the timeframe regarding the development of the Presentence Report may assist the Court in understanding how this irregular process has unfairly prejudiced the defendant.

1.     The defendant entered his guilty plea to a single count of conspiracy to commit money laundering under 18 U.S.C. § 1956(h) on December 12, 2017.  The plea agreement signed by both parties set forth an agreed-upon Guidelines calculation, with the exception of the two-point enhancement for "sophisticated laundering" at U.S.S.G. § 2S1.1(b)(3), which the parties agreed to contest at sentencing.  The Court set a sentencing date of March 2, 2018, and scheduled the Presentence Report to be completed by February 20, 2018.  The Court directed the parties to submit sentencing memoranda by February 22, 2018.

2.      The Probation Officer completed the Draft Report and provided it to the parties for comment on January 23, 2018.  The Draft Report did not apply the two-point enhancement for sophisticated laundering.  Draft Report ¶ 52.  (The Draft Report included a different enhancement relating to the business of laundering that would have resulted in the same Guidelines range as the sophisticated laundering enhancement.)

3.      In accordance with Federal Rule of Criminal Procedure 32(f) and Local Criminal Rule 32.2, both parties responded to the Draft Report by the February 5, 2018, deadline.  The government filed its response to the draft report on February 5, 2018, indicating "There are no material/factual inaccuracies therein."  The defense filed its response on the same date, noting a minor factual correction to the report and objecting to the enhancement.  The defendant's response cited to substantial case law on the business of laundering enhancement, including several cases where district courts have been reversed for applying the enhancement without adequate evidence to support it.

4.      On February 20, 2018, the date set by the Court, the Probation Officer released the Final Presentence Investigation Report ("Final Report") to both parties and the Court.  The docket entry for February 20, 2018, reads:  "FINAL PRESENTENCE INVESTIGATION REPORT (prepared by SrUSPO Kelly Kraemer-Soares) as to STANISLAV NAZAROV."  The Final Report did not include either the business of laundering enhancement or the sophisticated laundering enhancement.  Final Report ¶ 52.  The Probation Officer calculated a Guidelines range of 12-18 months, based on a total offense level of 13 and a criminal history category of I.  Final Report ¶ 90.  Defense counsel informed the defendant, the defendant's counsel in Israel, and the defendant's family that the Final Report did not include the two-point enhancement, though the government might argue for the enhancement in its sentencing memorandum and at

the sentencing hearing.  The Final Report resolved all outstanding objections except for an issue

related to an alternate birth date listed for Mr. Nazarov, which it summarized for the Court's

consideration.  Final Report at 23.

5.      On February 22, 2018, as directed by the Court, the parties filed their Memoranda in Aid

of Sentencing, relying on the Final Report for the position of the Probation Office.  The

government, as contemplated by the plea agreement, argued for the application of the

sophisticated laundering enhancement.  For the first time in these proceedings, the government

made specific arguments regarding the "layering" and offshore account factors set out in the

Guidelines commentary.  The government's arguments raised factual allegations that the

defendant disputes.

6.      On February 27, 2018, the Court asked the Probation Office to respond to the

government's position regarding the sophisticated laundering enhancement.  Revised Final PSR

at 24.  The Probation Officer set forth the government's position as stated in its Memorandum in

Aid of Sentencing.  The defense was not notified of the Court's request and did not have an

opportunity to respond.

7.      Later that day, February 27, 2018, the Probation Officer issued the Revised Final Report,

which explained the Court's request and the Probation Office's response.  The Revised Final

Report applied the two-level enhancement for sophisticated laundering, raising the total offense

level from 13 to 15 and the sentencing range from 12-18 months to 18-24 months.  Revised Final

Report ¶¶ 52, 52a, 60, 90.  The defense was surprised by the revised report but understood that

there would be an opportunity to argue its position at sentencing.

8.      On February 28, 2018, the Court, without notice to the defense, issued an Order making

findings regarding the sophisticated laundering enhancement.

The defense respectfully requests that the Court reconsider its Order and allow the defense to present arguments on the sophisticated laundering enhancement, as set forth below and as may be supplemented at the sentencing hearing on March 2. To be clear, however, the defendant does not request additional time to respond, as the defendant's number one priority throughout these proceedings has been to resolve his case as quickly as possible so that he can return to Israel to be with his very ill mother and his large and close-knit family.

## ARGUMENT

I.   **The Court Should Reconsider Its Order, Allow Mr. Nazarov to Present His Sophisticated Laundering Arguments at Sentencing, and Decline to Consider the Revised Final Report, Which Resulted from an Unfair Process That Violated Court Rules**

By failing to object to the Probation Officer's decision not to apply the sophisticated laundering enhancement in the Draft Report, the government waived that argument in connection with the Presentence Report. *See, e.g.*, *United States v. Ventura*, 650 F.3d 746, 750 (D.C. Cir. 2011) (explaining that "the district court properly accepted the PSR's findings of fact" where the defendant failed to object within 14 days pursuant to Rule 32(f)(1) and that "[a] contrary holding would render Rule 32(f) a mere administrative request"); *United States v. Lay*, 583 F.3d 436, 448 n.3 (6th Cir. 2009) (noting that a defendant who failed to object under Rule 32(f)(1) "forfeited his right to object below on that ground"). These principles apply equally to defendants and the government. Because the Revised Final Report resulted from a process that is procedurally defective, the Court should credit the Final Report rather than the Revised Final Report for purposes of sentencing.

Accepting the Revised Final Report, which improperly considers arguments the government declined to raise in connection with the Presentence Report, would render the applicable federal and local rules a nullity. Federal Rule of Criminal Procedure 32(f) provides

that, "[w]ithin 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." Fed. R. Crim. P. 32(f)(1). "After receiving objections, the probation officer may meet with the parties to discuss the objections." Fed. R. Crim. P. 32(f)(3). "The probation officer may then investigate further and revise the presentence report as appropriate." *Id.* The parties complied with Rule 32(f) with respect to the Final Report: both the government and the defense responded to the Draft Report on February 5, 2018, and the Probation Officer resolved these objections in the Final Report. By contrast, the process followed with respect to the Revised Final Report does not comply with Rule 32(f). According to the narrative in the Second Addendum to the Presentence Report, the Court asked the Probation Office to respond to the government's position regarding the two-level adjustment for sophisticated laundering. Revised Final Report at 24. The defendant not only had no opportunity to respond to the government's position but was not even aware that the Probation Office was considering a revision to the Final Report.

The purpose of the detailed procedural requirements of Rule 32 is to ensure that the process of preparing and finalizing the Presentence Report is fair and allows the parties an opportunity to respond to all issues addressed in the Presentence Report. The surprise Revised Final Report and the Court's ensuing Order run contrary to both the purpose and the letter of Rule 32.

The local Rules are also very specific with respect to the preparation of the Presentence Report. Criminal Rule 32.2 of the Rules of the United States District Court for the District of Columbia prescribes a timeframe and opportunity for the parties to object to a draft Presentence Report, consistent with the federal Rule 32. Local Criminal Rule 32.2(f) also allows for new

objections to be raised, "for good cause shown," though it is scrupulous about the requirement of notice and an opportunity to respond.  Local Crim. R. 32.2(f) ("The Court . . . for good cause shown, may allow a new objection to be raised any time before the imposition of sentence.  The Court shall ensure that the probation officer and the other party has ample notice of the objection and an opportunity fairly to rebut or support the assertion.").  The application of the Rule in this case is somewhat odd, because it was the Court and not one of the parties that raised the objection to the Final Report, but in any event the Rule is crystal clear that the opposing party should have an opportunity to respond.  That opportunity was not provided in this case.

The Court can consider the defendant's arguments based on this Response and based on arguments to be presented at the sentencing hearing.  Doing so does not fully repair, however, the unfair process that was followed in this case and the poor impression it leaves on the defendant, his counsel from overseas, and his family, who have been following every development in this case with considerable angst and apprehension.  The defendant respectfully requests that the Court acknowledge that the procedure that has been followed was not proper and decline to impose the two-point enhancement as a matter of fundamental fairness as well as based on the merits, to which we now turn.

## II.    The Enhancement for Sophisticated Laundering Should Not Apply

The Probation Officer explained the reasoning behind the belated addition of the sophisticated laundering enhancement in the Second Addendum to the Presentence Report. Revised Final Report at 24-25.  First, the Probation Officer acknowledged that the arguments it considered were limited to those set out by the government in its Memorandum in Aid of Sentencing regarding the layering and offshore account factors, which appear in Note 5 of the commentary to the sophisticated laundering guideline.  Revised Final Report at 24.  Second, the

Probation Officer summarized the government's position, drawing on the representations made by the government in its Memorandum in Aid of Sentencing. Revised Final Report at 24-25. Third, the Probation Officer provided a response to the government's position on the layering and offshore account factors. Revised Final Report at 25. Specifically, the Probation Officer determined that: (1) layering was not present based on the transfer of funds using three bank accounts, since "the defendant was not in control of the regulations imparted by the banks for these types of transactions"; (2) layering was present based on the government's representations about "CC-1's use of a hawala network in Russia"; and (3) although "the location of CC-1 happened to be outside of Israel," the Probation Officer was considering that fact for purposes of the layering factor, rather than the offshore account factor. Revised Final Report at 25. Notably, there is nothing in the narrative regarding the defendant's position, as the defendant was not notified of the potential revision and did not have an opportunity to state a position. Based solely on the government's representations, which include factual allegations the defendant disputes, the Probation Officer concluded that "based upon the government's argument regarding layering the transaction, the probation office believes the two level increase, pursuant to USSG §2S1.1(b)(3), would be appropriate and paragraph 52a. was added to the report to include the adjustment." Revised Final Report at 25.

The Probation Officer did not have the benefit of the defendant's response to the government's arguments in concluding that the enhancement should apply. As a result, the conclusion fails to take into consideration the unique circumstances of the defendant in this case and his life as an expatriate Russian living in Israel.

A.      **Layering**

The Second Addendum to the Revised Final Report provides the following explanation for the finding that the transaction in this case involved "layering": "[B]ased upon the information presented by the government regarding the CC-1's use of a hawala network in Russia to ultimately forward the money to the defendant in Israel would appear to rise to the level of layering a monetary transaction." Revised Final Report at 25. The defendant does not dispute that he used a hawala network to obtain the money that he agreed to receive from the government's cooperating witness, W-1. What the government and the Probation Officer fail to appreciate, however, is that this method was the simplest method Mr. Nazarov had at his disposal to obtain the money that W-1 agreed to send him. Although Mr. Nazarov does have a bank account in Israel, he is very unsophisticated regarding the Israeli banking system and does not know how to transfer funds from overseas to that account. The Court should understand that Mr. Nazarov speaks some Hebrew, but he is not fluent and cannot read Hebrew at all. He was raised in Russia and did not leave that country until he was a young adult. He lives in an expatriate Russian community in Israel. His wife is also a Russian national. They have adjusted to life in Israel but have not fully assimilated. These facts are the reason Mr. Nazarov arranged for the $50,000 to be transferred through the hawala network, which was simpler than a bank transfer to Israel based on his unique circumstances.

Mr. Nazarov also understood this particular transfer to be "kosher." The facts of what Mr. Nazarov understood are set forth in paragraph 35 of the Revised Final Report, namely that W-1 told Mr. Nazarov that the money was kosher "like . . . a baby's ass," to which Mr. Nazarov responded, "If this is so, I will give you a kosher account." Mr. Nazarov did not use the account in Russia to avoid having the funds be traceable; he used his contacts in Russia because that was

9

the simplest and most familiar way for him to receive funds transferred from overseas. There is no evidence to support the government's argument that the "man in Moscow" who could help with a wire transfer that was not "kosher" is the same individual as CC-1. Based on conversations with W-1, both Mr. Nazarov and CC-1 understood the transaction to be "kosher." Revised Final Report ¶ 35. CC-1 even provided his wife's bank account to receive the funds. Revised Final Report ¶ 37. The transfer of the $50,000 in FBI funds was as simple a transfer as could be considered "money laundering" under the statute and does not rise to the level of complexity that would warrant the sophisticated laundering enhancement. (This is not to say that Mr. Nazarov disputes that the offense to which he pled guilty is money laundering; he knew that he was receiving the $50,000 because of his prior involvement with W-1 in criminal conduct.)

The Court's Order cites to *United States v. Puerto*, 392 F. App'x 692 (11th Cir. 2010), in support of its finding regarding layering. That case involved a much more sophisticated money laundering scheme than the straightforward, one-time transaction to which Mr. Nazarov pled guilty. As stated in *Puerto*, "Over time, the fraud became exceedingly complex." *Id.* at 695. The fraud involved layering much more sophisticated than Mr. Nazarov's single transfer using a hawala and included multiple transactions over a much greater period of time.

### B.    Offshore accounts

For the reasons explained above, an account in Russia is not "offshore" for Mr. Nazarov. Russia is his native country, and it is the country where he understands the language and functions best. As explained in the defendant's Memorandum in Aid of Sentencing, the use of offshore accounts sometimes justifies the sophisticated laundering enhancement because it can demonstrate an attempt to conceal unlawful activity and evade the reach of U.S. laws. It does not make sense to apply the offshore account factor in this case, where the FBI used a

cooperating witness to reach out to Mr. Nazarov in Israel to arrange a transfer of FBI funds to him. Having never set foot in the United States, he had no way of receiving that money other than to have it sent overseas. As explained above, he did not have a sufficient understanding of the Hebrew language or Israeli banking system to have the funds transferred to him in Israel. Using an account and contacts in Russia was the simplest way he knew to receive the money. The transfer in this case was not "complex or intricate," and the enhancement should not apply. *See* U.S.S.G. § 2S1.1(b)(3) & note 5.

The Court's Order relies on *United States v. Amaris-Caviedes*, 701 Fed. App'x 84 (3d Cir. 2017), for its conclusion that the plain meaning of the term offshore accounts "embraces *all* foreign bank accounts." *Id*. at 85. That case also cites to the Oxford English Dictionary definition of "offshore" as "[i]n a territory outside one's own country." *Id*. As we have explained, Russia is Mr. Nazarov's "own country." He lived in Russia until he was a young adult, maintains contacts there, and does not read Hebrew or know how to handle financial transactions in Israel. Furthermore, *Amaris-Caviedes* included false invoices, the use of legitimate businesses to conceal illegal funds, and structuring of transactions to conceal them from authorities—none of which are present in this case. *Id*. at 85. An analysis of both cases cited by the Court make clear that the sophisticated laundering enhancement that was applied in those cases should not apply to Mr. Nazarov. These cases involve conduct that was more sophisticated than Mr. Nazarov's conduct. Indeed, we are not familiar with any cases that have applied the sophisticated laundering enhancement in circumstances that have fewer indicia of sophistication than are present in this case.

11

## **CONCLUSION**

In order to ensure fairness to the defendant, and because the facts do not support the sophisticated laundering enhancement in any event, the defendant respectfully asks the Court to reconsider its premature Order and conclude that the sophisticated laundering enhancement should not apply in this case.

Dated:  March 1, 2018                                Respectfully submitted,

Amy Jeffress (DC Bar No. 449258)
Kaitlin Konkel (DC Bar No. 1021109)
ARNOLD & PORTER
    KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 942-5999
Amy.Jeffress@arnoldporter.com

*Counsel for Stanislav Nazarov*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 1st day of March, 2018, I caused a true and correct copy of the foregoing **Response to the Court's Order of February 28, 2018**, to be filed and served electronically using the Court's CM/ECF system, which sent a notice of electronic filing to all counsel of record.

Amy Jeffress